Case number 23-5318, United States of America v. Leon Hensley. Oral argument not to exceed 15 minutes per side. Michael Hawley for the appellant, you may proceed. Your honors, may it please the court, I'm Michael Hawley. I represent Leon Hensley in this appeal. I'd like to reserve three minutes for rebuttal. Very well. Thank you. In federal court, the average sentence for murder is 20 to 22 years. Mr. Hensley committed a crime that the district court aptly described as a dreadful, even the very worst, type of invasion of privacy. He got 24 and a half years. Now, does his past explain this? It does not. He had no criminal record. In fact, he enlisted in the army. He served in combat. He almost got killed for his country. I don't think anyone on the street would say that this man deserves 24 and a half years in prison for what he did. Or that the government should spend $600,000 to enforce that sentence. So what's behind this is the sentencing. What's that getting at? Is that just the cost of this litigation or something? 20 years in prison is roughly $30,000 for you. So it's a massive expenditure of public resources. It's a very long sentence, no doubt about it. Surprisingly long. So how did, I mean, what's your take on how we got here? And so how did we get here? Yes, the sentencing guidelines, I think the judge, without his misconception about the weight he had to give the guidelines, would have given him less. I think the judge made two mistakes. I mean, one was the double counting issue, which is a much more legal issue. And the other is the weight he decided to give the range of life for 9,000 months, 750 years. Well, he didn't really give any weight other than the sentence at the top of this guideline. I mean, it seems like to me he ended up sentencing within the guideline that would apply, the range that would apply if you ignored 4B1.5B1. He did sentence only within the range that 3D1.4 would have called for. It was just at the top of the range. So you're just complaining that he sentenced at the top of that range, right? Essentially, Your Honor, I think he has a good argument for downward variance. But on top of that, just at the top of that range is a difference of five and a half years, roughly. That's a big difference for Mr. Hensley. And I think, yes, what the judge did was say, I'm going to, he said, whatever its flaws, I have to consider this range of 9,000 months. So that's the thumb you put on the scales, and you put it at the top of the range despite all this mitigation. The top of the lower range. Yes, the top of the shadow range or whatever, yes. So he's already, I think, it seems like he's already taken into account that he thinks that the 9,000 is too much by doing the lower range. Yes, Your Honor, I believe that's true. He's taken it into account. But he's still giving the 9,000 months wait, which is an error under Kimbrough. I mean, that's not the way the guidelines are supposed to work. And if they do work that way. Well, doesn't the 9,000 reflect that there are like multiple victims here? And these victims are still alive, they're not dead. So they potentially have a risk when this guy's let out of prison. So why can't 3D1.4 taking, I'm sorry, 4B1.5B1 take that into account to say that there's this risk if he is let out sooner that these multiple victims of sexual crimes could be at risk? Yes, Your Honor, well, those same, that same set of facts is already encompassed in the five level enhancement he got for the multiple counts. And. No, no, because multiple counts doesn't really take into account how many victims are out there, does it? It does in this case because the 25 counts went to 25 different victims. And it's, as the district judge said, it's the exact same facts that trigger the five levels under grouping and the five levels under this chapter four pattern of conduct enhancement. And of course, this goes more towards was the enhancement correct? You know, if the second issue we can assume, well, enhancement is correct, technically, but if the judge says, you know, the sentencing commission probably did not foresee this, this is absurd. Then the judge is free to say, I'm disregarding that. I think, I mean, why shouldn't we read this transcript to mean that the judge knew full well that he had authority to reject on policy grounds the guideline that you're talking about? It seemed to me, and I welcome correction on this point. It seemed to me that when he said he had to consider the 9,000, he was, it seemed like he was thinking more of the 3553A factor of avoiding disparate sentences from others, you know, in cases around the country rather than any kind of fidelity to the guideline itself. So, you know, you could have a judge who disagrees with a guideline, rejects it on policy grounds, but knows that other judges are imposing sentences pursuant to the guideline and pursuant to 3553A, that judge gives some consideration to the range that he's rejecting, not as the range qua range, but as sentences other judges are imposing. And I guess if that's a fair reading of the transcript, how is that an abuse of discretion on the court's part? Yes, Judge, I think what you've described is kind of what I described as, you know, Judge B in my reply, who like voluntarily takes on this, voluntarily gives the guidelines this kind of binding quality because he personally wants to make sure there's not disparity. But it's not guidelines qua guidelines. It's like forget the guidelines. He's just saying, I know there are judges out there who are imposing sentences in a certain range. Just like, you know, and how is that the judge not knowing he can reject the guideline on policy grounds? He's just taking an empirical fact into account. I don't, you know, with all due respect, I don't think that is a fair reading of what he did. Because, I mean, because he says, look, the commission probably didn't foresee this and I think this is absurd. Well, like, I mean, I don't mean to put you on the spot with like the transcript, but is there anything you would point us to in the transcript that would show he actually felt like he was bound in some respect by this guideline, qua guideline? I mean, I think where he explains it, you know, before imposing sentence, you know, when he's saying this is the reason why I'm doing this, he says. What page are you on? I'm sorry, it's page 73 or page ID 354. Let me do 3, 354. You know, he's saying it's hard to find comparators. You know, like, he may say, like, well, I don't know, I'm not going to find another guy who did this peeping Tom thing, got 25 counts. And, you know, I don't know what another judge might do in this exact same case. He says, at the end of that paragraph in the middle of the page, that's one of the reasons why. It's only one of the reasons. We don't know what his other reasons are. Whatever its flaws, the 9,000-month sentence is something the court has to at least keep in mind. He's saying this guideline can be so flawed that I have absolutely no faith in it, which is what he seems to be saying. If he calls it absurd, he has no faith in it. He says he still has to keep it in mind. And I think that is, as Judge Bush seems to feel, I don't want to put thought to his mind, but I mean, that's the thumb on the scales that put Mr. Hensley at the top of the range. He's saying, whatever the flaws, I'm going to have to consider this. And I think that's a violation of Kimbrough. I mean, that's what the government was arguing in Kimbrough. They said, you can't let judges disagree on policy reasons. There's going to be too much disparity. And the court rejected that. And Justice Scalia explains about the thumb on the scale and his, you know, if the guidelines have this, serve as the thumb on the scale rule, then the whole system is going to be unconstitutional again. You know, I mean, back before Booker, there was a departure system. You know, the guidelines weren't absolutely mandatory. But they were mandatory enough that it was a violation of the Sixth Amendment. And now, you know, this is why we have cases like Kimbrough. The Supreme Court is making sure these guidelines are fully advisory. And what Judge Richardson is feeling is that, well, something's making him keep that advisory or the mandatory aspect to them. He thinks he needs to keep a mandatory aspect to them. But he doesn't need to. And I think to be fair to Mr. Hensley, and this at least five and a half years that's at stake here for him. That's significant. I mean, it could be somebody coming in here with zero versus five and a half. We would take that quite serious. To be fair to him, I think he's just asking for a remand to say, Judge, you don't have to put that thumb on the scales. Now, what would you do? You know, Judge Richardson said, you know, you served in combat. And you were injured. And you're going to get, he says, I'm going to find that to be very important or something. Something along those lines. That's going to be helpful to you. Like, where did that help come? You don't see it anywhere. Like, I don't think the top of the range is helpful to him. Well, I mean, you know, he does, he applies the enhancement, right, which gets you to 9,000. And he's still imposing a sentence that's 293. So obviously, there's something happening, whether it is him setting aside the guidelines calculation for all purposes other than maybe some other judges are doing higher sentences. It may be, you know, parts of his background. I mean, what's your explanation for how he goes from what he says is a 9,000 month range to a 293 month sentence? I think the explanation is, you know, exactly what Judge Richardson is saying. This is absurd. If you had a criminal record, your range would be lower than. So this is absurd. So that explains how he gets from 9,000 down to that range. That explains it all by itself. But then where does he get some mitigation? Where does he get some credit for, you know, this really being on the scheme of production of child pornography, which often involves, you know, raping toddlers. Like, this is definitely on the low end of those things. Plus, he's a wounded veteran. All these things don't seem to be allowed in because the judge thinks, I've got to put that thumb on the scales. Do you think this is your stronger argument? I just have to start with this. It's the easier argument to talk about. I think the other one's quite strong, too. I mean. On the other one, how long did this conduct go on for? It's not. I don't think they have any idea how long the camera was running. He worked there about two years and three months. Quite some period of time, though, wasn't it? I mean. I don't think they. More than a day. Was it more than a couple days, do you think? It could have been a couple days. I mean, the footage, they said, well, it happened in this period because we know he worked there during this period. That's. I think that's all the record says on that. Because the one guideline section goes to a pattern which suggests different occasions, which suggests some extended period of time, which differentiates it from just the number of counts, I think. There's at least a suggestion here that this was happening over a long period of time.  There was 50 some, or there were 25 victims. There was. Sure. The tanning bed and also the camera on the stairs. Yeah. It's the amount of time. But yeah, I think they identified 57 people. And the conspiracy, or the period of the crime was charged two years and three months. But I think that's just because he worked there then and they didn't have any idea what date. Your point is the government's burden to establish that timeline more expressly and they didn't do it. In other words, if this has been going on for two years, that feels to me like different occasions, a pattern of activity. I mean, yes. If they're going to base a guideline enhancement on some fact that's not established in the plea, yes, it's the government's burden to establish that. Especially when it's going to create this enormous range. I guess on that, on the question of that enhancement itself, I mean, you know, 4B1.5B1 says for this same enhancement pattern, I think this one was the pattern of activity. Yes. Involving like sexual offense or whatever. It says that the offense level shall be five plus the offense level determined under chapters two and three. And I think the other enhancement came under three?  So like, I mean, why isn't this one of these instances where the guidelines by their plain terms directs sort of the, you know, what you're calling double counting? Yes. Well, I think it's like in Faro. In Faro, the guidelines on their face said count both of these. You know, there's this note in, I think it's chapter one. It says, you know, a general direction like count these, count both of these. And the court said, well, it doesn't look like this is the kind of situation the commission expected. So we need something more specific. Then after Faro, the commission gave them something more specific. But, I mean, the rule that Faro sets up is if you, if the court believes this is an unexpected situation, then you need some real, you need actual precise guidance from the guidelines. But, I mean, Faro didn't have the same, the same language didn't apply there, right? Yeah, you're right, Your Honor. It was not the exact same language, but it was similar guidance that, you know, applied both. It's more sort of, I don't know, portatory or vague there. I mean, here the guideline itself, to the extent we're just following the guidelines, the guideline says do this, add, you know, do that one first and then add this to it, which yields what you're calling double counting. I think with the language in the guidelines that Faro was talking about, I mean the court could always say, well, the guidelines say to do this because they always say to apply all of them at once. Yeah, but here they're saying expressly do the double counting, so to speak, that's the difference, you know. Well, if they foresaw this kind of situation, I think it's a little circular, yeah, yeah, yeah. Any other questions at this point? All right. Thank you, Mr. Holland. You'll have your full rebuttal. All right. May it please the court, Rasko Dean on behalf of the United States. I'd like to begin with addressing Faro and its applicability to this case and the double counting issue that the court was just talking with my colleague about. Faro compels an affirmance here on the double counting issue. As the court mentioned, what was going on in Faro was there were a Chapter 2 based defense level and a Chapter 2 enhancement and the guidelines were silent. The text of the guidelines themselves were silent about whether that enhancement should apply simultaneously with the base defense level when arguably they were penalizing the same aspect of the defendant's conduct. The government in that case pointed this court to Section 1B1.1 Application Note 4B, 4A, I apologize, for the idea that, look, where the guidelines are silent as to whether double counting should occur, the court should count it because of this application note. And Faro, I think, stands for this court's position that, you know, it kind of rejects the broad principle that silence in the guidelines always implicitly condones double counting. And here, that's simply not at play. So it's distinguishable. It's not like Faro puts a gun to our head on this issue, but it's distinguishable. It's distinguishable, yes, Your Honor. And certainly under the reasoning in Faro where the court says that it recognizes where the Sentencing Commission expressly mandates double counting, you know, we're going to do that. I think you look at the text of 4B1.5B1. It's pretty clear what the Sentencing Commission wants courts to do. They want the court to add five levels plus any points from Chapters 2 and 3. So assuming we agree with all that, how do we know that there was a pattern of activity here involving at least two separate occasions? Yes, Your Honor. Here, the defendant worked at a high school in Clarksville for over two years. There were more, there were 25 victims, minor victims. There were 700 images or recordings that were taken and including, I believe, more than 300 of minor victims. And given that period of time, that is by preponderance, I think, a pattern. Now, certainly as Mr. Holly pointed out, there was no metadata on the camera. So I don't think the government can say, well, on this day in September 2017 was when this minor victim was filmed. But the fact that there are that many recordings, that many victims over that period of time. Did the district judge make a finding on this? Did the defendant raise this specific point at sentencing? This point was not raised and it wasn't raised. There's a volume. There's a volume. I agree with you on the volume. But in terms of, you know, we know the camera was there for more than just 24 hours or something that might be viewed as just one occasion. Was there a finding on that? I do not believe from reading the transcript that there was any finding on the fact that, you know, one took place on X date, one took place on Y date. But certainly the defense didn't raise an objection on that point. And they haven't raised that argument on appeal either. And next, in regards to whether the district court misunderstood its discretion. The government's perspective on that is you look at the transcript of this sentencing hearing. There is just no clear evidence that it misunderstood its discretion to disregard the guidelines in any way. In fact, there's clear evidence that it well understood its discretion to disregard the guidelines. And I guess though, I mean, the district court says that this one guideline is absurd and then turns around and cites it as a reason for being at the top end of the range that he picked, that seems kind of inconsistent to me. That why would he be calling it absurd and at the same time he's also purportedly relying upon it? I think the court, as it said, was hesitant to completely disregard it because of what seems to be its policy that for 3553A6 considerations it needs to at least keep that guideline range in mind. And the court did at some point say it was going to give, that it would decide to give some weight to it because I believe he told defendant's counsel that, you know, your sentence, I'm going to think in terms of the 235 to 293 month range, but your sentence isn't going to be what I would give you if that was your actual range. But the court has discretion to have its own policy about 3553A6 considerations and how much weight it wants to give a guideline. And here the court did decide to give it some weight, but it was not confused about whether it had to or not. Well, I mean, I understand that argument, but, you know, Booker says that the guidelines can't be mandatory. Kimbrough says you're free to reject them. You have to explain yourself. You can't just sort of, you know, sort of dismiss the guideline. But if you have a reasoned disagreement, then you can reject the application of a guideline in a particular case. I mean, why isn't that regime de facto undermined? If all those things being true, a district court, I mean, this judge seemed to think he must have a certain, he must take these guideline sentences into account to avoid unwarranted sentencing disparities. Maybe he seemed to think that under our case law, Sixth Circuit, he's got to take this rejected range into account. And so if district judges think they have to take this rejected range into account, why aren't we de facto kind of back in a Booker pre-Kimbrough regime where the judge is compelled to some extent by a range that Booker says cannot compel him? Yes, Your Honor, well, I agree. I think I agree with what the court's saying, which is if a judge does feel compelled to take something into account that a guideline range that they think is absurd or that they don't want to take into account, into account, that does seem problematic under Booker and Kimbrough. But the record here read as a whole, I think, makes clear that the judge knew that he could either totally disregard it, he could give it some weight, but that his policy was to give it a little bit of weight and really barely any weight at all, right? There's a more than 90- Five and a half years' worth that one could infer. But a significant downward variance. But five and a half years is substantial. Significant, yes, Your Honor. But, you know, at the end of the sentencing hearing, and I'm looking at page number 360, ID number 360 of the transcript, he reaffirms, the district judge does, that he wants to primarily think in terms of the lower range, and he says, and yet the court is very hesitant to the extent it is authorized to completely ignore the higher guideline range. It's hesitant to do that because, as this court sees it, it's the kind of thing that increases unwarranted sentencing disparities. And from the government's perspective, that is the court articulating that, you know, it's going to give these guidelines some weight, really a little bit of weight because of its policy regarding unwarranted sentencing disparities, which it's free to have. Yeah, that does seem to be what he's saying. And if we think of that kind of, you know, just as a consideration of unwarranted sentencing disparity, that's no problem. But, I mean, it's an interesting question whether you've got sort of a zombie guideline here, you know, that the judge feels, you know, he doesn't have to honor it 100 percent, but maybe he has to honor it, I don't know, some percent. And, I mean, if the guideline has some compulsive force, then, you know, that's contrary to Booker, but I totally get your argument. And, you know, he does couch it in terms of unwarranted sentencing disparities. So the question for the other side is, well, why isn't it that at the end of the day? Yes, Your Honor. It's a tricky question. It is a tricky question. Yes, Your Honor. If I may, I'd also like to touch on an alternative reason that the court can affirm the purported double counting here. I've already touched on the fact that the plain language of the guidelines certainly calls for it here. And I think the court can affirm on that basis alone. Even if that language was not in the guidelines really mandating that double counting occur, 3D1.4, which is a multi-count enhancement. What is that getting at? That's getting at the additional criminal conduct and the harm faced by multiple victims, is what is the aspect of the defendant's conduct that that guideline is penalizing. And so that penalizes a distinct aspect of the defendant's conduct from 4B1.5B1, which reflects Congress' mandate to the Sentencing Commission to really protect the public by making sure that offenders who engage in a pattern of prohibited sexual activity are in prison longer. So they go to distinct aspects of the defendant's conduct and distinct harms. And is there anything more to it? I mean, both have a certain multiplicity aspect to it. I mean, is there anything more to it other than the one guideline says, you know, just sort of crank it up higher against the sex offenders? I mean, not that there's anything wrong with that. Well, certainly I think it goes to the notion of dangerousness that is shown by a pattern of conduct, and sometimes sex offenses can be certainly difficult to prosecute, but also difficult at times to detect, perhaps. And so you could say it reflects a judgment of the Sentencing Commission that there are people who may be very dangerous as shown by a pattern of conduct, but aren't going to fall under the Career Offender Guideline and aren't going to fall under 4B1.5 Section A because they don't have a prior conviction. If we didn't have this, like, you know, I don't have it right in front of me. The language about, you know, for a pattern involving a sex offense, involving a sex, if you excise that and you're just left with, what does it say? Do you know what that guideline says? If we just took that length? May I grab my book real fast, Your Honor? Judge Radler's beating you to it here. So which one is it here? This one? I'm not a thousand percent sure what you're asking, but I think that's, this is the pattern, this is the 5 plus, and here's the 2, yeah. Okay. He engaged in a pattern of activity involving prohibited sexual conduct. So I guess it would just be the defendant engaged in a pattern of activity. It might not make much sense. I'm just wondering, if you took the language that limits this to sexual conduct, if you took that out and it was more generic, you know, would it be double counting then is kind of what I was getting at. Well, I think, you know, one thing I overlooked in answer to one of your prior questions, you were asking what the purpose of this guideline is. I think there is data out there. Not really. I was asking, like, what it's punishing. Well, yes, Your Honor, and maybe the fact that there is data that people who engage in these sex offenses often recidivate. And so that would make these type of offenses more apt for a guideline like this. But what I was just wondering about now is, if you take away the language that limits this to sex offenses, the pattern thing, you know, would that, would the application of that plus the multiple counts be double counted? You take away the sex conduct aspect, which is not present for the multiple counts, and you just have pattern here, multiple counts here, why wouldn't that, would that be, I mean, I'm just, I don't know, I'm just curious. I think it would depend if the sentencing commission and certainly, you know, in a given case, the government and the court could see if there was a distinct harm that was being addressed by the application of that guideline to a particular defender. It's in Chapter 4, so perhaps some type of punishment to some generic offense could certainly be possible. But I think there would be perhaps more double count, more issues with double counting. Okay, anyway, I don't want to belabor it. I want to go back to the district court's characterization of 4B1.5, B1 as being absurd. I think the court was saying it's absurd because under A, if you're a convicted offender, you would get less time than he's getting as never been convicted before. I guess a couple of questions, one, do you agree that that reading of 4B1.5 is correct comparing A to B? And then secondly, do you have any explanation if it is correct, why B would give more time than A? Well, I think it can be correct at times, Your Honor. It's not always correct. Here, and I believe we put this in a footnote, if the defendant had a prior sex conviction that qualified under 4B1.5A, he most likely would be facing a mandatory minimum sentence of 25 years on all of his counts of conviction. And so he would have actually received a higher sentence here than the district court gave him. But there are certainly instances, and this is one, where the guidelines can work what would be an odd result. And part of that is because of the number of counts. Part of it is because of the two other Chapter 2 enhancements that the defendant got that sent his guidelines so high that that plus five puts him in life range. So would you agree that this was an odd result in this case? Absolutely. Okay. And even though it's an odd result, it's okay for the district court to have considered this 4B1.5 1B guideline? Absolutely. The district court noted, went beyond saying it was an odd result, noted it was an absurd result, largely thought in terms of the other guideline range, but in accordance as it articulated with its policy regarding 3553A6 considerations, did give the original guideline some weight. And that was entirely proper in terms of the way the guidelines were compiled and under the Supreme Court's precedent in Kimbrough and Booker and this court's precedent interpreting those cases. Anything further? Thank you, Your Honor. Thank you, Mr. Dean. We'll hear from Mr. Hawley. Your Honor? I just have one point to start. So do you agree with the government that in the district court, you didn't really argue that neither of these could apply. It's just your point was that they can't both apply. That's right. My point about the time and the weathered occasions, you really didn't make that point. You agreed this could apply. You just thought they couldn't both apply. Yes, Your Honor, because I understand the case law under 4B1.5B to be very expansive. A pattern is two instances. I just want to make sure we're on the same page. And although there were 700 minutes, the thing only runs 60 seconds at a time, so that doesn't mean 700 different viewings of different people. It means 12 hours of footage, roughly. Now, on the judges, the government proposes that, well, I don't know if that's true or not. We don't know if that's true. The government's best evidence is what's cited after he's already imposed sentence. And given his reason, and his reason is whatever its flaws, I got to give this weight. Afterwards, the defense counsel says, hey, you gave that weight even though you said it was absurd. I think that's a mistake. And all he says then, he doesn't say, I know I can disregard it totally. He says, to the extent it's authorized to completely ignore the higher range. It's not even like he's sure that he can do it. He's just, well, to the extent I could, well, I'm hesitant. It's a very, with all due respect, it's very waffly. It's not a clear statement of when you're deciding to give someone five and a half extra years or however many years we think it is, you should be very clear about it. Well, I could totally disregard this, but I'm going to go to the top of the range for X, Y, and Z reasons, despite this mitigation, one, two, and three that you've pointed out that I said is important. So I don't think it's clear that this is his own personal policy. I mean, if we, let's just set aside the particular offense here. If we had a case where a judge disagrees with a guideline, let's say it's some bank robbery thing, and whether, I don't know, whatever. There's some aggravated conduct aspect, and the judge just disagrees with that. And so that reduces somebody's range from, say, oh, I don't know, 300 months to 200 months. But the judge says, look, at the same time, I know that most judges are applying that enhancement in lots of cases, or some cases at least. And independently, under 3553A, I think I need to take that into account. So I'm going to go with the little bit, the higher end of my revised range. I mean, would we have to reverse that, Judge? Yeah, I don't understand the question. If that really is his own personal policy . . . He's like, well, I just know there are these other sentences, and other judges disagree. I'm not saying that's this case, but just in terms of the judge's discretion. He personally diluted his power under Kimbrough. I mean, I would say that that may still be an error, because the Supreme Court doesn't let him create a system that is in violation of the Sixth Amendment. It may be that if this is just his own personal policy, well, that's still a violation, because he has created a system that violates the Sixth Amendment. Now, I really don't think that's what happened here, and I think, to be fair to Mr. Hensley, he should get another chance at this. One last . . . I mean, and I'll get out of the way. Why do you think this case is different than that case, specifically? I think because the judge was so clear that he is saying, whatever the flaws in this guideline, I'm going to have to give it weight. He said . . . that's what he says when he's imposing the sentence. I have to give it weight. You remember which page? Is that 72? That was back . . . page 73. All right. I have to give it weight. That's one of the reasons, whatever its flaws, the 9,000-month sentence is something the court has to at least keep in mind. Yeah, he's not saying keep the guideline in mind. He's saying the 9,000-month calculation. Yes. Yes, which is the absurd result that he is saying that . . . He's keeping it in mind. I mean, it would be sort of odd just to forget this was ever even part of the case, right? That would be strange. Yeah, but what the judge has said in connection with this is that if the range . . . if I hadn't decided the range is actually 9,000 months, I would have given you less time. He's clearly saying, when he's saying, I'm keeping it in mind, that's what he's talking about. I'm giving it some weight. I know there's a difference. They ask them to keep a lot of things in mind when they do sentencing. That's the hard part about it, I think. Sure. Sure. They have to consider. Sure. I mean, here he's definitely explaining why he's giving it weight. Keeping it in mind here is giving it weight. He says he's giving it weight. He says, if I weren't keeping this in mind, I would have given you less time. So he is giving it weight. He's very clear about that. All right, well, thank you, Mr. Hawley.  Appreciate both of your arguments. The case will be submitted.